ALLIED CHEMICAL COMPANY,
Appellant,

v.

Jay DeHAVEN, Appellee.

No. A14–90–01045–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 16, 1992.

Rehearing Denied Jan. 30, 1992.

---

J. Rufus Wallingford, Jennifer Hogan, Houston, for appellant.

George E. Pletcher, John L. Russell, David J. Mullican, Jr., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

Appellant, Allied Chemical Company (Allied), is appealing from a judgment in the amount of $1,593,800.23 in favor of appellee, Jay DeHaven (DeHaven). The trial court struck Allied's answer as a discovery sanction. At the trial on damages, the jury awarded $330,000. actual damages and the trial court awarded prejudgment interest at a rate of 10% compounded daily. Allied, in eleven points of error, complains of the trial court striking its answer, making findings of fact and conclusions of law, and awarding actual damages and prejudgment interest without rendering judgment for Allied on its offset claim. We affirm in part and reverse and remand in part.

In October of 1977, DeHaven brought suit against Allied, the Maglon Partnership (Maglon), Steve Novak (Novak), Foy Phillips (Phillips), Charles Reams (Reams), Maglon, Inc., L.M. Gambrell (Gambrell), Skyland Enterprises Corporation (Skyland), and other parties. DeHaven alleged fraud and conspiracy in the breach of a contract and prayed for an accounting among the parties. The contracts on which this lawsuit is based, are exchange agreements AX–563 and AX–564. These agreements were entered into on September 28, 1974 by I.W. Swisher (Swisher), on behalf of Allied, and Novak, on behalf of Maglon. Maglon consisted of DeHaven, Novak, Phillips, and Reams as partners. Novak entered into all contracts with Allied as the representative of Maglon. The agreements were superseded and voided by a third exchange agreement, AX–566, executed by Novak and Gambrell. Gambrell signed the new agreement on behalf of Allied, because Swisher's supervisor instructed him that something was improper about agreement AX–566. Under the terms of the new agreement, Allied was to receive $330,000. more than it did under the original agreements and Skyland was to receive $173,000.

On October 4, 1974, Maglon received a $346,000. check from Allied. From these proceeds each partner received $20,000. and Skyland received $173,000. Skyland was a corporation formed by Gambrell. Gambrell was a vice-president of Allied at the time Skyland was formed, at the time agreement AX–566 was signed with Novak, and at the time the $173,000. from Maglon was deposited to Skyland. The $173,000. was shared equally by Gambrell and Novak without the knowledge or consent of the other partners of Maglon.

DeHaven discovered the deception by Gambrell and Novak when he was called as a possible witness in an unrelated case in federal district court, *Triple T Liquid Supplements, Inc. v. Allied Chemical Corp.* The fact that a conspiracy had existed between Gambrell and Novak came to light and DeHaven brought suit. On December 11, 1989 this case was called for trial. Mike Crawford (Crawford), the attorney who represented Triple T in the federal court case, was in the courtroom. Crawford happened to examine DeHaven's exhibit 22 containing photographs of Allied's chief executive officer and members of the executive committee. Brian Forrow (Forrow), General Counsel for Allied was in one of the pictures. After examining the exhibit, Crawford realized that he had taken Forrow's deposition in the *Triple T* case. During the course of the deposition, Craw-

ford had questioned Forrow about the facts of this case. Despite numerous requests, none of this information had been provided by Allied during discovery in this case.

Crawford provided DeHaven with Forrow's deposition, and DeHaven brought a motion to strike Allied's pleadings as a sanction for discovery abuse. The trial court held a hearing on the matter, granted Allied's motion for a continuance, and held a rehearing. The trial court found that Allied had violated the court's orders and the rules of discovery by misleading the trial court and DeHaven. Allied's answer was struck. A trial was held on damages. The jury awarded $330,000. actual damages and no punitive damages. The trial court awarded prejudgment interest in the amount of $1,263,800.23. Final judgment was entered containing an accounting among the partners of Maglon.

## SANCTION

Allied complains, in its first three points of error, that the trial court committed error and abused its discretion in striking Allied's answer.

A trial court's right to, and method of, assessing sanctions is in a state of transition at this time. The Texas Supreme Court has recently recognized that there are constraints on the trial court in deciding to strike a party's pleadings as a sanction for discovery abuse. *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991). In an effort to give trial courts guidance, the supreme court set out factors to be followed in making a decision on sanctions. *Id.* at 917–18. The sanction must be just. In other words, "a direct relationship must exist between the offensive conduct and the sanction imposed...." and the "sanction ... should be no more severe than necessary to satisfy its legitimate purposes." *Id.* at 917. A trial court should "consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.* A court's decision to strike a

party's pleadings "should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.* at 918. "[I]f a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and ... [strike that party's pleadings]." *Id.* Although a trial court must be cautious about disposing of a case without a trial on the merits, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); *Transamerican*, 811 S.W.2d at 919.

▮ The trail of discovery orders [1] in this case leading up to this final sanction against Allied is set out and discussed below for clarification.

1/24/84:

Order for Defendant Allied Chemical Corp. to Execute, and File by 3/22/84, an Affidavit Ratifying the Testimony of Swisher signed;

1/31/84:

Order Deeming Facts Admitted by Defendant, Allied Chemical Corp. signed, and

Order for Allied Chemical Corp. to pay $100. in attorney's fees to DeHaven;

2/10/84:

Order to Compel Answers by Defendant Allied Chemical Corp. to Plaintiff's Request for Admissions signed, and

Order for Allied Chemical Corp. to pay $500. in attorney's fees to DeHaven;

2/14/84:

Order on Plaintiff's Motion for Relief under TRCP 168 due to the Failure of

---

1. Although Rufus Wallingford of Fulbright & Jaworski is shown as the attorney of record in this case, Mr. Wallingford did not become responsible for this case until a few weeks before trial, after all discovery had been completed.

Allied Chemical Corp. to Answer Certain Interrogatories signed, and

Order for Allied Chemical Corp. to pay $150.00 in attorney's fees to DeHaven; 1/15/86:

Affidavit of William F. Reichenbach filed;

DeHaven made several efforts to depose persons with Allied who were knowledgeable about the facts leading up to this lawsuit. The only person ever produced by Allied for deposition testimony was Swisher. In response to further deposition attempts by DeHaven, Allied stated it "had no other employee other than Swisher knowledgeable of relevant matters," and no other corporate knowledge of the facts. The trial court ordered Allied to file an affidavit within 60 days swearing to these statements and adopting Swisher's testimony as its testimony. Allied did not comply with the court's order. The affidavit was finally filed, upon notification of noncompliance by DeHaven's counsel, two years after the order was given.

That Allied's general counsel, Forrow, had supervised an investigation into Gambrell's dealings with Maglon and made a report to the executive committee, is evidence of other Allied employees with knowledge of relevant information. Forrow testified, at the rehearing on the motion to strike Allied's pleadings, that the report he made was in the minutes of the executive committee meeting. He stated that he seriously doubted, and would be surprised to learn, that the minutes of this meeting had been destroyed. Yet, Allied never produced this information. These minutes containing the substance of Forrow's investigation is corporate knowledge of other relevant facts.

■ Despite Allied's contentions to the contrary, this is a very serious discovery offense. The sanction imposed by the trial court in this case is directly related to the discovery abuse. Unlike the facts in *Transamerican* where the only discovery abuse was the failure of a corporate representative to show up for his deposition, in this case there had already been discovery orders deeming facts admitted, compelling answers to admissions and interrogatories, and assessing reasonable attorney's fees against Allied. The trial court had previously considered and utilized lesser sanctions, and they did not "fully promote compliance." *Transamerican*, 811 S.W.2d at 917. Statements made to the trial court and opposing counsel which were purposefully misleading is evidence of a party's bad faith. Additionally, we disagree with Allied's contention that the trial court's statement of more than one reason for striking Allied's pleadings was evidence of an arbitrary decision. The judge was entitled to consider the entire history of the case before him. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). "Multiple violations of the discovery rules and court orders relating to discovery may be a factor authorizing imposition of the default judgment sanction, even when the offending party offers justifications and excuses." *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990).

In point of error one, Allied claims that the trial court erred by striking Allied's answer without proper notice and hearing as required by due process.

■ A party must be given reasonable notice of a hearing on motion for sanctions. *Hogan v. Beckel,* 783 S.W.2d 307, 308 (Tex. App.—San Antonio 1989, writ denied). For the trial court to impose sanctions on Allied with no notice, or inadequate notice, of the hearing on DeHaven's motion would be an abuse of discretion. *Koslow's,* 796 S.W.2d at 704. "Reasonable notice," however, is dictated by the circumstances of each case. *Hogan,* 783 S.W.2d at 308. In this case, the trial was set to begin on the day the abuse of discovery was uncovered. The very next morning, with evidence in hand to support his contentions, DeHaven brought forward his motion for sanctions. At that time, Allied did not complain that reasonable notice had not been given, nor did Allied request a delay of the trial. Under these circumstances, DeHaven brought his motion for sanctions to the attention of

the trial court and opposing counsel as soon as was practicable.

Allied also claims it was denied an adequate opportunity to be heard before sanctions were imposed. The trial court, however, held a hearing on the motion for sanctions at the time the motion was brought to the court's attention. In addition, the trial court gave Allied a continuance and held a rehearing before entering a final order to strike Allied's answer. Allied was given an opportunity to argue in opposition of the sanction and explain its conduct to the trial court. Due process requires that a party be given an adequate opportunity to be heard, *Worldwide Anesthesia Assocs., Inc. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445, 448 (Tex.App.—Houston [14th Dist.] 1988, no writ), and Allied was twice given that opportunity. We consider this to be adequate.

In point of error two, Allied states that it was an abuse of discretion for the trial court to strike Allied's answer while imposing no sanction on DeHaven for similar discovery abuse. No previous discovery abuse by DeHaven is shown. The trial court is entitled to consider the entire history of the case when making a decision on sanctions. *Downer*, 701 S.W.2d at 241. Allied has demonstrated no abuse of discretion by the trial court. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (1985).

In point of error three, Allied alleges that it was an abuse of the trial court's discretion to strike Allied's answer as to Phillips, Reams, Maglon, and Maglon, Inc. Maglon, Inc., according to its pleadings, was never seeking any recovery from Allied. Therefore, striking Allied's answer as to Maglon, Inc. is really a moot action. With regard to the other parties, Allied itself filed a motion to realign the parties and admitted that Phillips, Reams, and Maglon all had the same interests as DeHaven. The fact that Phillips, Reams, and Maglon did not file a motion to strike Allied's pleadings does not mean that the trial court could not strike Allied's answer as to them. *Carr v. Harris County*, 745 S.W.2d 531, 533 (Tex.App.—Houston [1st Dist.]

1988, no writ). These parties are entitled to rely on Allied's discovery made in response to DeHaven's requests. *Id.* Therefore, they would be just as harmed by Allied's discovery abuse as DeHaven. *Id.* There is no evidence that these parties were not harmed by the discovery abuse.

We find no error or abuse of discretion in the trial court striking Allied's answer as a discovery abuse sanction. We overrule appellant's first three points of error.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Allied, in points of error four and five, alleges the trial court abused its discretion and erred in making certain findings of fact and conclusions of law. Allied argues that findings of fact 7, 9, 11, 13, 19, 22–24, 26, 27, and 29–32 and conclusion of law 1 are not supported by legally or factually sufficient evidence. Allied also argues that the trial court erred in making findings of fact 1–5, 8, and 33–38 and conclusions of law 2–6 because they encompass matters tried to the jury.

Allied requested the trial court make findings of fact and conclusions of law after its pleadings were struck, and the court complied. Legal insufficiency requires us to find no evidence in support of those findings and conclusions after considering only the evidence and inferences that tend to support them. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989); *Kincaid v. Gulf Oil Corp.*, 675 S.W.2d 250, 255 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). Based on the facts set out above, we cannot make such a finding. There is ample evidence to support the trial court's findings and conclusions. Additionally, factual insufficiency requires us to find the evidence too weak to support the findings and conclusions after weighing all of the evidence. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). A review of all the evidence reveals that there

is sufficient evidence to support the trial court's findings of fact and conclusions of law.

This Court has also reviewed findings of fact 1–5, 8, and 33–38 and conclusions of law 2–6 and fails to find that they encompass matters tried to the jury. The fact that Maglon was a partnership, that the partners named were actually partners, that this case involved a prior summary judgment which was appealed and reversed, that Swisher testified to certain events in his deposition, the status of Maglon, and the status of the judgment among the partners are all matters which are either set out in the pleadings of both parties or in the record. The trial judge's findings of fact and conclusions of law are not within the realm of matters tried to the jury since the jury only decided the issue of damages. There is no reversible error on the part of the trial court in making its findings of fact and conclusions of law as requested by Allied. Points of error four and five are overruled.

### DeHAVEN'S STANDING TO SUE

Allied, in point of error six, complains DeHaven lacked standing to sue on behalf of Maglon. Allied alleges the trial court erred in overruling its special exceptions based on standing.

DeHaven was undisputedly a partner of Maglon when the deal with Allied was signed, when the deal with Allied was transacted, when payment made by Allied was received and deposited, and when proceeds were paid to Skyland. Thus, DeHaven was a partner of Maglon at all relevant times relating to the transaction that is the basis of this suit.

■■■ DeHaven, as a partner of Maglon at the time the breach of contract and conspiracy occurred, had standing to sue on behalf of Maglon. Although a partnership has standing to file suit in its own name, Tex.R.Civ.P. 28, the common law rule that all partners can bring suit themselves on behalf of the partnership is still in force. *Chien v. Chen*, 759 S.W.2d 484, 491 (Tex.App.—Austin 1988, no writ). The purpose behind the common law rule is to

protect third parties from multiple lawsuits and judgments. *Spiritas v. Robinowitz*, 544 S.W.2d 710, 714–15 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Therefore, the fact that DeHaven was a plaintiff, and Reams, Phillips, Novak, and Maglon were defendants in this suit, is irrelevant, and the common law rule is satisfied since all partners were parties to this suit. *Id.* at 715.

■■■ Allied claims that DeHaven's withdrawal from the partnership terminated his power to bring suit on behalf of the partnership. When DeHaven withdrew from Maglon, the partnership was dissolved. Once Maglon was dissolved, however, it was not immediately terminated, but went through a winding-up process. *McKellar v. Bracewell*, 473 S.W.2d 542, 549 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.). After dissolution, DeHaven's "general agency which grew out of the partnership [was] terminated, and the powers implied from the relationship [were] terminated, except for those powers necessary to complete winding up." *Shannon v. Monasco*, 632 S.W.2d 946, 948 (Tex.App.—Waco 1982, writ ref'd n.r.e.); Tex.Rev.Civ.Stat.Ann. art. 6132b, § 33 (Vernon 1970). Under the facts of this case, where a conspiracy was alleged between the partner who made the contract and Allied's vice-president, exceptional circumstances exist which would make it inequitable to prevent the resigning partner from bringing suit on behalf of Maglon during the winding up phase.

■■■ In any case, the parties were realigned when Reams, Phillips, and Maglon ratified and adopted DeHaven's pleadings and Maglon was then seeking recovery from Allied. Allied alleges that the ratification and adoption pleadings were filed well beyond the applicable statute of limitations and therefore, Maglon could not request relief against Allied. The amended pleadings relate back to the filing of the original petition, for limitations purposes, since all the pleadings were based upon the same transaction or occurrence and Reams, Phillips and Maglon were all parties to the suit originally. *Chien*, 759 S.W.2d at 493

(quoting TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986)); *J.G. Boyd's Good Housekeeping Shops, Inc. v. General Sec. Serv., Inc.,* 483 S.W.2d 826, 828 (Tex.Civ. App.—Waco 1972, no writ). These parties were not added to the suit, instead their interests were simply realigned as recognized by Allied when it filed its motion to realign the parties. Allied also alleges that Maglon gave up its right to the cause of action when the partners transferred all of the partnership's assets and liabilities to Maglon, Inc. The partners agreed, and Maglon, Inc. admitted in its pleadings, however, that the proceeds from this transaction would be received by Maglon, Inc. for the benefit of the partnership, and split in accordance with partnership holdings. This transaction was a partnership transaction and maintained its character as a partnership transaction, allowing Maglon or its partners to sue for recovery on the deal. We overrule Allied's point of error number six.

## DAMAGES

Allied, in point of error seven, argues that there is factually and legally insufficient evidence to support the jury award of $330,000. in actual damages.

 In order for the evidence to be legally insufficient to support the $330,000. in damages, we must find no evidence to support the damages award after considering only the evidence and inferences which tend to support such an award. *Responsive Terminal Sys., Inc.,* 774 S.W.2d at 668. Allied argues that because a partnership is bound by the acts and knowledge of a partner, Novak's knowledge of the true terms of the deal and his action in signing on behalf of Maglon would bind the partnership. Allied reasons that since Maglon was bound by Novak's knowledge, it could have suffered no damages from the deal. We disagree.

 The partnership is bound by the knowledge of the partner conducting the particular transaction, "except in the case of a fraud on the partnership committed by or with the consent of that partner." TEX. REV.CIV.STAT.ANN. art. 6132b, § 12 (Vernon 1970). In this case, Novak, without the knowledge or consent of his partners, conspired with Allied's vice president, Gambrell, to cut a deal benefitting Allied in an unusually high amount, and to misappropriate funds from Maglon. Maglon is not bound by Novak's knowledge of the misappropriation and did suffer damages from the transaction. Allied, on the other hand, is liable for the fraudulent actions of its officers. *Kirby v. Cruce,* 688 S.W.2d 161, 165 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Even after learning of Gambrell's fraudulent dealings, Allied ratified Gambrell's actions by retaining the benefit of the deal cut with Maglon. We find there is some evidence to support the damages award against Allied.

 Along these same lines, a review of all of the evidence indicates that the evidence was factually sufficient to support an award of damages in favor of DeHaven. The evidence overwhelmingly shows the other partners had no knowledge of the conspiracy by Novak and Gambrell at the time of the transaction, and Gambrell was acting within the scope of his authority. Allied's point of error seven is overruled.

## IMPEACHMENT OF PHILLIPS

In point of error eight, Allied complains that the trial court prevented it from impeaching the testimony of Phillips. Allied alleges that it attempted to offer evidence about Phillips in accordance with TEX. R.CIV.EVID. rule 609, and the trial court sustained DeHaven's objection.

 Allied is correct in its statement that rule 607 allows the credibility of a witness to be attacked by the party calling him. TEX.R.CRIM.EVID. 607. The fact that Allied called Phillips as a witness, however, is not the reason the trial court would not allow Allied to introduce its evidence. Rule 609 provides that "[f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted...." TEX.R.CRIM.EVID. 609. The document offered into evidence was an agreement stating Phillips would cooperate with the investigating judicial

agency, perform any duties or requirements imposed by that agency, and enter a guilty plea at some future date. This document is not evidence of a conviction, nor is it evidence of a guilty plea such that it would constitute a conviction. There is no evidence that Phillips has ever been required to enter the guilty plea agreed upon. A conviction must meet the requirements of rule 609 or it is inadmissible. *Juan A. v. Dallas County Child Welfare*, 726 S.W.2d 241, 245 (Tex.App.—Dallas 1987, no writ). The trial court properly excluded Allied's impeachment evidence. We overrule point of error eight.

### ALLIED'S OFFSET CLAIMS

Allied, in point of error nine, complains that it is entitled to recover on its offset claims against Novak, Phillips and Reams. If DeHaven is awarded the $330,-000. the jury found as actual damages, then Allied alleges it is entitled to a judgment nihil dicit against Novak, Phillips and Reams awarding an offset in the amount equal to their partnership interests.

Allied is basing its request for offset on the assumption that DeHaven is not entitled to recover the full amount of damages suffered by the partnership. We have already held that DeHaven has standing to sue for damages on behalf of the partnership and request an accounting among the parties. Allied is not entitled to a claim of offset for an amount equal to the partnership interests of Novak, Phillips and Reams. Further, Allied offered no evidence to prove up its offset claim and is not entitled to judgment nihil dicit. We overrule Allied's ninth point of error.

### PREJUDGMENT INTEREST

In point of error ten, Allied alleges the trial court's award of prejudgment interest at the rate of 10% compounded daily was excessive.

For the 10% prejudgment interest rate awarded by the trial court to be proper, the amount of damages must not be ascertainable from the face of the contract. *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930–31 (Tex.1988). Otherwise, article 5069–1.03 limits the rate of prejudgment interest, for contracts which are silent on the issue of prejudgment interest, to "six percent per annum ... allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable." TEX.REV.CIV.STAT. ANN. art. 5069–1.03 (Vernon 1987). Additionally, the Texas Constitution limits the recovery under a breach of contract case to 6% per annum simple prejudgment interest. TEX. CONST. art. XVI, § 11.

We recognize that the decision in *Perry Roofing* extended the supreme court's reasoning and ruling in *Cavnar*, awarding prejudgment interest at the rate of 10% compounded daily, to contract cases in which the amount of damages is not ascertainable. *Perry Roofing Co.*, 744 S.W.2d at 931. *See Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985) (awarded prejudgment interest at rate of 10% compounded daily in wrongful death, personal injury and survival actions in order to encourage settlements, restore equity to this area of law and make injured parties whole). Prior to the *Cavnar* decision, courts liberally construed the "ascertainability of damages from the face of a contract" requirement of article 5069–1.03 in order to award prejudgment interest to damaged parties in contract cases. Based on sound public policy reasons, an award of prejudgment interest was held to comply with the statute if the measure of damages was ascertainable from the face of the contract with reasonable certainty. *Cavnar*, 696 S.W.2d at 553; *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 567 (Tex.1984) (damages are ascertainable if the contract sets out a measure with which damages can be ascertained with reasonable certainty); *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980); *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 103 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). Since the *Cavnar* decision, courts appear to be leaning away from the liberal test, toward a more restrictive test requiring the exact "amount of damages to be ascertainable

from the face of the contract" before an award of prejudgment interest under the statute would be proper. *Perry Roofing Co.*, 744 S.W.2d at 930; *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex.1988); *OKC Corp. v. UPG, Inc.*, 798 S.W.2d 300, 307–08 (Tex.App.—Dallas 1990, writ denied); *University Sav. Ass'n v. Burnap*, 786 S.W.2d 423, 427 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Winograd v. Willis*, 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Phillips v. Phillips*, 792 S.W.2d 269, 273 (Tex.App.—Tyler 1990), *writ granted on other grounds*, 34 Sup.Ct.J. 6 (October 6, 1990). In this manner, a litigant can avoid the statutory 6% simple prejudgment interest rate and get the *Cavnar* rate of 10% compounded daily. The supreme court in *Cavnar*, did not imply that courts should construe the damages ascertainable from contracts in such a manner that, at all costs, the statutory and constitutional limit on prejudgment interest is avoided.

■ Although DeHaven alleged fraud and conspiracy in the breach of the contract, the only issues raised by the evidence on damages are for breach of contract. DeHaven's testimony at trial addressed only damages arising from the breach of contract by Allied. The damages awarded by the jury are consistent with the breach of contract evidence and are ascertainable from the contracts entered into evidence in this case. Under these circumstances, the statutory 6% simple interest rate should apply. The trial court has no discretion to increase the rate of prejudgment interest recoverable under article 5069–1.03, *San Antonio Villa del Sol Homeowners Ass'n v. Miller*, 761 S.W.2d 460, 462 (Tex.App.—San Antonio 1988, no writ), and it is error to extend the *Cavnar* holding to this case. We sustain Allied's tenth point of error.

■ Allied, in point of error eleven, argues that the trial court erred in awarding DeHaven prejudgment interest during the pendency of Allied's successful appeal of DeHaven's summary judgment. Allied has failed to cite any authority to support its argument. Article 5069–1.03 contains no provision for the suspension of prejudg-

ment interest where a settlement offer is made or where there is a delay or interruption in the litigation process. The award of prejudgment interest during the pendency of Allied's successful appeal of DeHaven's summary judgment is within the sound discretion of the trial court. No abuse of discretion is shown. We overrule Allied's final point of error.

We affirm the trial court's judgment in part, and reverse and remand in part for a recalculation of prejudgment interest in compliance with our finding that the statutory 6% per annum simple interest rate applies.

Affirmed in part; reversed and remanded in part.