Gillespie v. Majestic Transp., Inc., 2016 NCBC 67.

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 324

JAMES FRANKLIN GILLESPIE and
GILLESPIE'S MOTOR FREIGHT, a NC
General Partnership,
       Plaintiffs,

v.

MAJESTIC TRANSPORT, INC.,
ENRIQUE URQUILLA, and JANETH
BERMUDEZ,
       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTION TO DISMISS**

THIS CAUSE was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases.

THIS MATTER comes before the Court on Defendants Majestic Transport, Inc., Enrique Urquilla, and Janeth Bermudez's Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Motion") pursuant to North Carolina Rule of Civil Procedure 12(b)(6) ("Rule(s)").

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, the oral arguments, and other appropriate matters of record, FINDS and CONCLUDES that the Motion should be DENIED, or DENIED in part,

conditioned upon Plaintiffs' filing of the amendment to the Second Amended Complaint for which the Court has provided leave herein.

*Scarbrough & Scarbrough, PLLC, by John F. Scarbrough, for Plaintiffs James Franklin Gillespie and Gillespie's Motor Freight.*

*Hull & Chandler, P.A., by Andrew S. Brendle, for Defendants Majestic Transport, Inc., Enrique Urquilla, and Janeth Bermudez.*

McGuire, Judge.

I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    Around August 2014, Plaintiff James Franklin Gillespie ("Gillespie") and Defendant Enrique Urquilla ("Urquilla") entered into an oral partnership agreement (the "Partnership Agreement") to form Plaintiff Gillespie Motor Freight ("GMF"), a general partnership organized under the laws of the State of North Carolina.  Gillespie and Urquilla each hold a fifty percent (50%) interest in GMF. GMF was formed for the purpose of transporting shipments of freight as a motor carrier in intrastate and interstate commerce.

2.    Gillespie contributed equipment to GMF.  GMF also leases nine trucks from a separate company owned by Gillespie (the "Gillespie Trucks"). Urquilla contributed money to GMF and "promised to manage the logistics of the partnership business, including arranging contracts with freight brokers and shippers, handling finances and accounting for the partnership."  (Second Amended Compl. ¶ 8).

3.    Defendant Majestic Transport, Inc. ("Majestic"), is a North Carolina corporation with its principal place of business in Cabarrus County.  Urquilla is CEO of Majestic.   Defendant Janeth Bermudez ("Bermudez") serves as Majestic's

president.  Majestic owns one truck (the "Majestic Truck").  Bermudez also manages GMF's finances. (*Id.* 10).

4.      Gillespie and Urquilla agreed that payments received from customers for the transport of shipments by the Gillespie Trucks would go to GMF, while payments for the transport of shipments made by the Majestic Truck would go to Majestic.

5.      Plaintiffs allege that, unbeknownst to Gillespie, Urquilla and Bermudez acted outside the interests of GMF by contracting with brokers and shippers on behalf of Majestic for transport of shipments using the Gillespie Trucks.  (*Id.* ¶ 14). Payments for these shipments allegedly went to Majestic, Urquilla, and Bermudez rather than GMF.  Urquilla and Bermudez "falsely represented to Gillespie that payment for transporting shipments by the [GMF] trucks … was being paid to [GMF]" when in fact "the money was being diverted to Majestic, Urquilla, and Bermudez." (*Id.* ¶ 15).  Plaintiffs allege that "Urquilla and Bermudez were successful in carrying out this scheme because . . . Gillespie was away from the office, driving night and day to deliver shipments."  (*Id.* ¶ 16).  Gillespie discovered the improper diversion of GMF's payments during the week of January 4, 2016.  (*Id.* ¶ 18).

6.      Plaintiffs allege that after Gillespie discovered the scheme Urquilla and Bermudez removed GMF's computer from the partnership's office, and excluded Gillespie from the operation and management of GMF.  (*Id.* ¶¶19, 22).

7.      On January 11, 2016, Plaintiffs filed an action against Defendants.[1] Plaintiffs took a voluntary dismissal of that action on January 14, 2016, and on February 1, 2016, instituted this action by filing a Complaint alleging claims for breach of the Partnership Agreement, breach of fiduciary duty, constructive fraud, actual fraud, civil conspiracy, conversion, and seeking to impose a constructive trust over all funds belonging to GMF, pierce Majestic's corporate veil, recover punitive damages, and dissolve GMF.  Plaintiffs also requested that the Court enter temporary, preliminary, and permanent injunctions to prohibit Defendants from further interfering with GMF.

8.      On February 9, 2016, a hearing was held before the Honorable Anderson D. Cromer on Plaintiffs' motion for a temporary restraining order.

9.      On February 10, 2016, by Order of the Chief Justice of the North Carolina Supreme Court, this case was designated a mandatory complex business case.  This case was then assigned to the undersigned by the Honorable James L. Gale, Chief Special Superior Court Judge for Complex Business Cases.

10.      On February 11, 2016, Judge Cromer granted the motion for a temporary restraining order in part, ordering that no party take any action to destroy or transfer data on GMF's computer, and that Defendants' counsel make the computer available to Plaintiffs for copying of the hard drive.  Judge Cromer denied

---

[1] Although neither party has raised the issue, the Court notes that Gillespie's filing of the Complaint on January 11, 2016, particularly in light of his request for judicial dissolution, was an "unequivocal expression of an intent and desire to dissolve the partnership" and "the partnership was automatically dissolved on that date." *Sturm v. Goss*, 90 N.C. App. 326, 332, 368 S.E.2d 399, 402-403 (1988); N.C. Gen. Stat. §59-61(1)(b).

the remainder of the relief requested in Plaintiffs' motion for a temporary restraining order.

11.     On April 8, 2016, Defendants filed a Motion to Dismiss seeking dismissal of all of Plaintiffs' claims except the claim for judicial dissolution of GMF. On April 28, 2016, Plaintiffs filed a response in opposition to the Motion to Dismiss, and on May 27, 2016, the Court convened a hearing on the Motion to Dismiss. On the morning of May 27, 2016, prior to the hearing, Plaintiffs filed an Amended Complaint, rendering Defendant's Motion to Dismiss moot. *Houston v. Tillman*, 234 N.C. App. 691, 695, 760 S.E.2d 18, 20 (2014) (finding that plaintiff's amendment of the complaint rendered any argument concerning the original complaint moot); *Krawiec v. Manly*, 2015 NCBC LEXIS 85, **5-6 (N.C. Super. Ct. 2015). At the hearing, the Court instructed Plaintiffs' counsel to file a Second Amended Complaint incorporating the allegations of the Complaint and the Amended Complaint in one consolidated pleading, and on June 1, 2016, Plaintiffs filed the Second Amended Complaint. On June 3, 2016, Defendants filed their Second Motion to dismiss seeking dismissal of the Second Amended Complaint and a supporting memorandum, and on June 6, 2016, the Court held a hearing on the second Motion to Dismiss.

II.     DISCUSSION.

12.     Defendants move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "The appropriate inquiry on a Motion to Dismiss pursuant to Rule 12(b)(6) is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to

state a claim upon which relief may be granted under some legal theory." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008).  Such a motion should be granted only when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).  While the Court treats well-pleaded allegations in a complaint as true and admitted in analyzing a Rule 12(b)(6) motion to dismiss, it will not consider unwarranted conclusions of law or deductions of fact.  *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986).

13.     Defendants' arguments in support of dismissal are not altogether clear. Defendants reference only Rule 12(b)(6) as a basis for their motion, but argue that Gillespie lacks "standing" to pursue the claims.  (Defs.' Br. Supp. Mot. Dismiss 2). The argument that Gillespie lacks standing would seem to implicate subject matter jurisdiction under Rule 12(b)(1).  Nevertheless, the Court notes that other reported decisions of North Carolina's courts have considered challenges to a partner's "standing" to raise claims, against other partners and against third-parties, under Rule 12(b)(6). *See e.g., Chesson v. Rives*, 2013 NCBC LEXIS 46 (N.C. Super. Ct. 2013); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.,* 351 N.C. 331, 525 S.E.2d 441 (2000); *Gaskins v. J.S. Procter Co., LLC*, 196 N.C. App. 447, 675 S.E.2d 115 (2009).  Accordingly, the Court will consider the Motion pursuant to Rule 12(b)(6).

14.     Defendants' primary argument in support of dismissal is that "Gillespie [ ] alleges that his injuries are identical to those allegedly suffered by The Partnership

[GMF]", and that the "failure to allege a separate and distinct injury . . . prohibits" Gillespie from bringing claims against his partner, Urquilla, and against third-parties Majestic and Bermudez.    (Defs.' Br. Supp. Mot. Dismiss 3).  Defendants contend that Gillespie's claims must be dismissed because "[i]t is settled law in [North Carolina] that one partner may not sue in his own name, and for his benefit, upon a cause of action in favor of the partnership." (Defs.' Br. Supp. Mot. Dismiss 2; citing *Gaskins*, 196 N.C. App. at 451, 675 S.E.2d at 117).  Defendants' reliance on *Gaskins*, however, is misplaced.  *Gaskins* applies only to claims brought by limited partners against limited partnerships, and not to claims raised by a general partner in a general partnership.  In *Gaskins*, the plaintiffs were limited partners in a limited partnership that owned and operated an apartment complex.  196 N.C. App. at 449, 675 S.E.2d at 116.  The plaintiffs brought a lawsuit against the general partners and a third-party company owned by one of the general partners alleging that the general partners mismanaged the apartment complex and operated it to enrich the third-party company at the expense of the plaintiffs' investments.  *Id.* at 449-50, 675 S.E.2d at 116-17.  The plaintiffs made claims for breach of fiduciary duty, negligence, breach of contract, and constructive fraud.  *Id.* at 450, 675 S.E.2d at 117.  The trial court dismissed the plaintiffs' claims and they appealed.  The Court of Appeals framed the "dispositive question" on appeal as "whether a *limited* partner can bring suit in his personal capacity for injuries to the partnership when he does not sufficiently allege a special duty or a separate and distinct injury."  *Id.* at 449, 675 S.E.2d at 116 (emphasis added).  Applying the North Carolina Supreme Court's holding in *Energy*

*Investors Fund, L.P., supra*, the Court of Appeals in *Gaskins* concluded that the plaintiffs could not pursue their claims against the general partners or the third-party company. 196 N.C. App. at 458, 675 S.E.2d at 122.

15.     In *Energy Investors*, our Supreme Court held that a limited partner lacked standing to pursue claims to "recover for the loss of its equity investment" against a third-party who made negligent misrepresentations to the partnership. 351 N.C. at 333, 525 S.E.2d at 443. The Court reviewed the law of other states and scholarly commentary regarding the nature of limited partnerships, and concluded that limited partnerships were like corporations and limited partners analogous to shareholders. *Id.* at 333-35, 525 S.E.2d at 443-44. The Court noted that limited partnerships, like corporations: "were unknown to the common law and, like corporations, are 'creatures of statute.'" *Id.* The Court further noted that "[b]oth forms of organization can attract investment capital by offering limited liability with roughly similar effects in limited partnerships and corporations." *Id.* The Court also recognized that limited partners were like shareholders in a corporation because they are "immune to personal liability for partnership debts save for [their] original investment," are "not thought to be an 'owner' of partnership property," and do "not manage the business." *Id.* Based on these principles, the Court held that "that the Court of Appeals properly equated the status of limited partners in a partnership to the relationship that exists between corporate shareholders and the corporation." *Id.* Accordingly, the Supreme Court applied the law regarding a corporate shareholder's rights against a corporation and concluded that in order for a limited partner to bring

suit he must allege (1) "an injury 'separate and distinct' to himself", or (2) "injuries arising out of a 'special duty' running from the alleged wrongdoer to the [limited partner]." *Id.* (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997)).

16.     The holdings in *Energy Investors* and *Gaskins* are not applicable to the allegations in this action. Gillespie and Urquilla were in a common law general partnership, not a statutory limited partnership, and the reasoning underlying the treatment of limited partners as analogous to shareholders in a corporation do not control the outcome here. *Jackson v. Marshall*, 140 N.C. App. 504, 508, 537 S.E.2d 232, 235 (2000) (recognizing that holding in *Energy Investors* "applied principles of corporate law to limited partnerships."); *Chesson*, 2013 NCBC LEXIS 46 at **8-10 (acknowledging the holding in *Energy Investors* but not applying it to claims between partners in a common law general partnership). Unlike a limited partner, Gillespie has an ownership interest in the partnership property and profits as a general partner. N.C. Gen. Stat. §§ 59-54 - 59-56. Furthermore, Gillespie, as a general partner, has equal rights in the management and conduct of the partnership business that a limited partner generally does not possess (absent authority expressly granted by a partnership agreement). N.C. Gen. Stat. §§ 59-48(5); 59-54. Gillespie is also jointly and severally liable for the obligations and debts of the general partnership. N.C. Gen. Stat. §§ 59-45; *Dwiggins v. Parkway Bus Co.*, 230 N.C. 234, 237-238, 52 S.E.2d 892, 894, (1949). Most significantly, Urquilla and Gillespie, as partners, had fiduciary duties to one another. *Casey v. Grantham*, 239 N.C. 121, 124-25, 79 S.E.2d

735, 738 (1954). The holdings in *Energy Investors* and *Gaskins* do not apply to claims raised by partners in a common law general partnership.

**Gillespie's claims against Urquilla**.

17.    The conclusion that Gillespie's claims are not barred by the holdings in *Energy Investors* and *Gaskins* does not, however, establish that Gillespie can pursue his claims against Urquilla in this action.  In North Carolina, "the general rule is that one partner cannot sue another partner at law until there has been a complete settlement of the partnership affairs and a balance struck." *Pugh v. Newbern*, 193 N.C. 258, 260, 136 S.E. 707, 708 (1927).  In other words, a general partner typically must pursue damages for injuries caused by his partners through dissolution of the partnership and a winding-up and accounting of each partners' partnership shares to determine damages to his partnership interest.[2]  This general rule, however, is subject to numerous, well-established exceptions, several of which are applicable to the claims raised by Gillespie against Urquilla in this action.  *Id.*; *Crosby v. Bowers*, 87 N.C. App. 338, 344, 361 S.E.2d 97, 101 (1987); *see also Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 578, 412 S.E.2d 1, 6 (1992).

a.  *Breach of Partnership Agreement.*

18.    Gillespie alleges the following claims against Urquilla which are subject to the Motion to Dismiss:  breach of partnership agreement, breach of fiduciary duty

---

[2] It is not clear that Gillespie seeks, or could recover, damages from Urquilla beyond the value of his interest in the partnership at the time of dissolution of the partnership. *Chesson*, 2013 NCBC LEXIS 46 at **8-10.  This would include damages for any losses to the value of his partnership interest suffered as a result of Urquilla's conduct before the dissolution, *Id.* at *10,  which appear to be the damages Gillespie seeks in this lawsuit.

and constructive fraud, fraud, conversion, and civil conspiracy.[3] The Court already has concluded these claims are not precluded by the law applicable to claims raised by limited partners. The Court further concludes, as noted above, that these claims fall within the exceptions to the general rule against one general partner suing his other general partners.

19.     In Plaintiffs' First Claim for Relief, they allege that Urquilla breached the terms of their Partnership Agreement by diverting payments for work performed by GMF to Majestic. (Second Amended Compl. ¶¶ 24-28). One partner may bring a claim against another partner for breach of a partnership agreement. *Pugh*, 193 N.C. at 261, 136 S.E. at 709 (partner may bring claim against a co-partner "upon express personal contracts between the partners"); *Crosby*, 87 N.C. App. at 344, 361 S.E.2d at 101 (1987) (holding that "[t]he partnership agreement in the present case is an express personal contract between the partners" and that the plaintiff could sue the defendant partners directly for breach of the partnership agreement). Accordingly, the Court concludes that Gillespie has standing to make a claim for breach of the Partnership Agreement against Urquilla, and Defendants' motion to dismiss this claim should be DENIED.

b. *Breach of Fiduciary Duty and Constructive Fraud.*

20.     In their Second and Third Claims for Relief, Plaintiffs allege that Urquilla breached a fiduciary duty to Gillespie and engaged in constructive fraud by

---

[3] Defendants do not make separate arguments for the dismissal of the claims for constructive fraud, punitive damages, permanent injunction, or piercing the corporate veil. These claims, however, effectively rise or fall on the Plaintiffs' contract and tort claims.

"misappropriating" and "converting funds rightfully belonging to the partnership and converting the funds to his own personal use and enjoyment." (Second Amended Compl. ¶¶ 31, 38).

21. "Business partners . . . are each other's fiduciaries as a matter of law." *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991) (citing *Casey*, 239 N.C. 121, 79 S.E.2d 735; *Stamm v. Salomon*, 144 N.C. App. 672, 680, 551 S.E.2d 152, 158 (2001)). In *Casey*, the Supreme Court held:

> It is elementary that the relationship of partners is fiduciary and imposes on them the obligation of the utmost good faith in their dealings with one another in respect to partnership affairs. Each is the confidential agent of the other, and each has a right to know all that the others know, and each is required to make full disclosure of all material facts within his knowledge in any way relating to the partnership affairs.

239 N.C. at 124-25, 79 S.E.2d at 738; *Chesson*, 2013 NCBC LEXIS 46 at *13 (Partner's fiduciary duties to one another "include providing full information to the partnership, accounting for the use of partnership property, disclosing self-dealing transactions, and remitting profits obtained through transactions affiliated with the partnership's business."). Self-dealing of the type alleged by Plaintiffs against Urquilla in this case is a breach of his fiduciary duties to Gillespie. *Compton v. Kirby*, 157 N.C. App. 1, 15-16, 577 S.E.2d 905, 914-915 (2003). In addition, "a breach of fiduciary duty amounts to constructive fraud." *Id.* at 16, 577 S.E.2d at 914. Gillespie has standing to make claims for breach of fiduciary and constructive fraud duty against Urquilla, and Defendants' motion to dismiss this claim should be DENIED.

c. *Fraud.*

22.     Plaintiffs allege Urquilla engaged in fraud when he "misrepresent[ed] to [Gillespie] that funds rightfully belonging to the partnership business were being properly contributed to the partnership, when in reality the funds were being diverted to Majestic." (Second Amended Compl. ¶ 41). A claim for fraud is another well-recognized exception to the rule that one partner cannot sue another. *Pugh*, 193 N.C. at 261, 136 S.E. at 708-709 ("A partner may maintain an action at law against his copartner . . . [w]hen one partner has been guilty of fraud in contracting the debt or in incurring the obligation or by concealing the property or by other device defeating the rights of the complaining party."). The Court concludes that Gillespie has standing to make a claim for fraud against Urquilla, and Defendants' motion to dismiss this claim should be DENIED.

d. *Conversion.*

23.     In their Sixth Claim for Relief, Plaintiffs allege the Defendants "made an unauthorized assumption and exercise of ownership over funds rightfully belonging to the partnership business" and to the partnership's exclusion. (Second Amended Compl. ¶¶ 48, 49). Plaintiffs allege Gillespie was damaged by the Defendants' actions. (Id. ¶ 50). A partner may bring an action for conversion against another partner. *Pugh*, 193 N.C. at 261, 136 S.E. at 708-709 ("A partner may maintain an action at law against his copartner . . . [w]hen the joint property [of the partnership] has been wrongfully destroyed or converted."); *Lewis v. Boling*, 42 N.C. App. 597, 606, 257 S.E.2d 486, 492 (1979) (noting that a claim for conversion of

partnership property is an exception to the rule that one partner cannot sue another).

Defendants' motion to dismiss Gillespie's claim against Urquilla for conversion must

be DENIED.

e. *Civil Conspiracy*.

24.     Since Gillespie's claim for conversion against Urquilla should not be

dismissed, the Court concludes that Gillespie's Fifth Claim for Relief for civil

conspiracy (Second Amended Compl. ¶¶ 45, 46) against Urquilla and Bermudez for

unlawfully conspiring to convert GMF's funds should not be dismissed.  Defendants'

motion to dismiss Gillespie's claim for civil conspiracy must be DENIED.

**Gillespie has authority to assert GMF's partnership claims against Majestic and Bermudez.**

25.     In the Second Amended Complaint GMF is named as party-Plaintiff and

Gillespie purports to raise claims for GMF, alleging that "Gillespie and the

partnership have been damaged" by the conduct of Defendants.  (Second Amended

Compl. ¶¶ 28, 34, 39, 46, and 50).  The Complaint, however, does not expressly state

whether Gillespie brings the claims directly for GMF or derivatively.[4]  Nevertheless,

---

[4] It is questionable whether the term "derivative" is properly applied to a claim belonging to a general partnership.  *Wasserman v. Kay*, 14 A.3d 1193, 1215, 197 Md. App. 586, 624 (2011) ("[T]he term 'derivative' is an inappropriate and confusing term to use in the general partnership context. 'Derivative' actions are necessary in the corporate and limited partnership context, where the shareholders and limited partners have no managerial rights and thus must 'derive' the right to sue from the entity itself."); *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161, 1178 (5th Cir. Tex. 1985) (Recognizing that Texas law regarding availability of a derivative claim in a partnership setting was unclear and concluding "[w]e do not hold that Texas law would necessarily allow a derivative action on the part of a minority partner or an owner of a partnership interest."); 1 A. Bromberg & L. Ribstein, *Bromberg and Ribstein on Partnership* (2015) § 5.03[A] ("[E]ven the name 'derivative suit' may be inappropriate in a partnership context.").

Defendants contend that the claims are derivative and that Gillespie may not maintain claims on behalf of GMF because he did not allege that he had complied with the pre-suit requirements contained in N.C. Gen. Stat. § 59-1003, [5] and did not verify the Second Amended Complaint pursuant to Rule 23(b).[6] Although Defendants have not raised the issue, the Court also must determine whether an individual general partner has the authority to raise claims belonging to the general partnership absent express authority granted by a partnership agreement or the consent of the other partners.

26.    As a preliminary matter, the Court concludes that the pre-suit requirements in G.S. § 59-1003 have no application to the claims in this lawsuit. First, that statute is contained in the Revised Uniform Limited Partnership Act (Article 5), and no such requirement is provided for in the Uniform Partnership Act (Article 2).  Plaintiffs allege that GMF was a common law general partnership, not a limited partnership.  Second, the statutory language makes it abundantly clear that G.S. § 59-1003 applies only to derivative actions being pursued by limited partners on behalf of a limited partnership and not to claims raised by general partners in a common law general partnership.  G.S. § 59-1003 requires that a plaintiff "set forth with particularity the effort of the plaintiff to secure initiation of the action by a

---

[5] G.S. § 59-1003, "Pleading", provides: "In a derivative action the complaint shall set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort."
[6] Rule 23(b) provides as follows: "Secondary action by shareholders. – In an action brought to enforce a secondary right on the part of one or more shareholders or members of a corporation or an unincorporated association because the corporation or association refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath."

*general partner* or the reason for not making the effort." (emphasis added). The Revised Uniform Limited Partnership Act defines a "general partner" as "a person who has been admitted to a **limited** partnership as a general partner." G.S. § 59-102(6) (emphasis added). In sum, to the extent the claims Gillespie seeks to pursue for GMF are derivative, G.S. § 59-1003 does not apply.

27. Similarly, the Court concludes that the claims being made for GMF should not be dismissed for failure to comply with the verification requirement in Rule 23(b). The express language of the Rule makes it applicable to "shareholders or members of a corporation or an unincorporated association", and does not include partners in a general partnership. In addition, a verification under Rule 23(b) is a procedural, and not a substantive, element of a derivative claim, and is not jurisdictional. *Alford v. Shaw*, 327 N.C. 526, 531, 398 S.E.2d 445, 447 (1990). The purposes served by the verification requirement, including discouraging meritless "strike suits" and ensuring that a plaintiff has investigated the claim, are not implicated under the facts involved in this lawsuit. *Id.* at 532, 398 S.E.2d at 448. Finally, if the Court believed it was necessary for Plaintiffs to verify the Second Amended Complaint, it would have the authority to, and would, have granted leave for Plaintiffs to file such a verification. *Id.* at 533, 398 S.E.2d at 448.

28. The question remains, however, as to whether Gillespie may pursue claims that belong to GMF. It is clear under North Carolina law that "one partner may not sue *in his own name, and for his benefit*, upon a cause of action in favor of a partnership." *Godwin v. Vinson*, 251 N.C. 326, 327, 111 S.E.2d 180, 181 (1959)

(emphasis added); *Threadgill v. Faust*, 213 N.C. 226, 230, 195 S.E. 798, 800 (1938) ("The general rule in this jurisdiction is that one partner may not sue in his own name alone, and for his own benefit, upon a cause of action accruing to the partnership. The action must be prosecuted in the name of the real party in interest"; citations omitted). Here, Gillespie has not brought GMF's claims for himself, but rather has named GMF as a plaintiff in the lawsuit and appears to assert claims on behalf of GMF.[7]

29. In North Carolina, whether a partner may bring a claim belonging to the partnership, at least in the absence of express authority provided in a partnership agreement or consent by the other partners, is not clear.[8] Broad language in *Threadgill* suggests that North Carolina may adhere to the general common law position that requires all partners be parties to a lawsuit raising a claim belonging to the partnership. 213 N.C. at 230, 195 S.E. 798 at 800 ("[I]n all suits relating to a partnership all the partners are necessary parties, and the action must be brought in the name of the partnership."). Even if it is interpreted in that way, however, the

---

[7] In North Carolina, a partnership may sue in its own behalf and in its own name. G.S. § 1-69.1(a)(1). The statute, however, does not provide who may bring a suit for a partnership.
[8] The issue of whether less than all partners, or an individual partner, can sue on a claim belonging to the partnership has generated a wide range of responses from the courts in other jurisdictions that have considered it. *See* 1 A. Bromberg & L. Ribstein, *Bromberg and Ribstein on Partnership* § 5.01 – 5.06 (2015) (noting that "[c]uriously, the [Uniform Partnership Act] is silent" on the issues of "whether fewer than all the partners can sue on a partnership right" and exhaustively discussing the conclusions reached by various courts and commentators). The court decisions and commentators considering the right to pursue legal claims belonging to a partnership have focused on a partner's rights to participate in the management of the partnership, recognizing that the UPA provides that partners have an equal right to participate in management, but also requires that certain partnership decisions may require majority or unanimous approval by partners, and the impact that alleged partner misconduct or conflicts of interest should have on who is permitted to pursue such claims. *Id.*

language in *Threadgill* does not state that all partners must be aligned as plaintiffs in the lawsuit. Here, Urquilla is a party to the action, albeit as a defendant.

30. To the extent *Threadgill* can be interpreted as requiring that all partners be "parties" to an action asserting a partnership claim, that requirement arguably is satisfied by the presence of Gillespie and Urquilla in this lawsuit. *Allied Chem. Co. v. DeHaven*, 824 S.W.2d 257, 264 (Tex. App. Houston 14th Dist. 1992) (holding where plaintiff partner named the other three partners as defendants in the lawsuit, the purpose behind the common law rule requiring all partners to bring suit on a partnership claim, protection of third parties from multiple lawsuits, was satisfied).

31. There are different considerations when a claim is brought against a third-party to the partnership who acted independently and when a claim is brought on behalf of the partnership for injuries caused by collusion between the third-party and one of the general partners. In a case such as this, involving two equal 50% partners, one of whom allegedly acted in concert with third-party defendants to cause the injury to the partnership, it makes little sense to require the agreement of both partners to pursue the claim. Urquilla would be highly unlikely to consent to or participate in prosecution of the claims at issue in this case. This would leave the partnership, to the extent it suffered injury separate from Gillespie's injuries, with no recourse against the third-party. Other courts that have considered the question of whether a partner should be permitted to sue on behalf of a partnership when other partners are involved in the alleged wrongdoing or otherwise have a conflict of

interest have a reached similar conclusion. *Cates*, 756 F.2d at 1178 ("[W]here the controlling partners, for improper, ulterior motives and not because of what they in good faith believe to be the best interests of the partnership, decline to sue on a valid, valuable partnership cause of action which it is advantageous to the partnership to pursue -- Texas law would afford *some* remedy to the minority partner or partnership interest owner"); *Benedict v. Whitman Breed Abbott & Morgan*, 282 A.D.2d 416, 418, 722 N.Y.S.2d 586, 588 (N.Y. App. Div. 2d Dep't 2001) (individual partner may sue for "injuries to the partnership . . . where, . . ., it is alleged that the other equal partner participated in some wrongdoing with a third party."); *Wasserman*, 14 A.3d at 1216-1217, 197 Md. App. at 626-627 (requiring unanimous consent of all partners to pursue claims when some of those partners are alleged to have engaged in the misconduct underlying the claims would not make sense.); *Thompson Door Co. v. Haven Fund*, 351 A.2d 864, 865 (Del. 1976) ("Each partner has the power to use ordinary legal process to enforce obligations owed the partnership and therefore may engage counsel to sue on behalf of the firm . . . and that rule is particularly significant, and necessary, when a majority of the general partners has a divided interest. If the law were otherwise, valuable rights might be lost by failure to sue (for example) within a statutory period or to plead certain defenses"; citations omitted); *Allied Chem. Co.*, 824 S.W.2d at 264 ("Under the facts of this case, where a conspiracy was alleged between the partner who made the contract and Allied's vice-president, exceptional circumstances exist which would make it inequitable to prevent the resigning partner from bringing suit on behalf of [the partnership] during the winding up phase.");

*Serpa v. Jolly King Rests., Inc.*, 62 F.R.D. 626, 634-35 (S.D. Cal. 1974) (recognizing general principal that one partner may be permitted to sue on claim belonging to the partnership where other partner is alleged to have engaged in fraud or other misconduct).

32.     Whether viewed as "direct" claims being asserted by Gillespie for GMF against Majestic and Bermudez, or "derivative" claims being brought on behalf of GMF by Gillespie, because obtaining Urquilla's agreement to pursue the claims is impractical, it would be inequitable not to permit Gillespie to raise claims GMF may have arising from the allegations in this case.  The Court concludes that under the particular facts of this case involving two equal partners, one of whom is alleged to have engaged in misconduct underlying the partnership's claims against the third-parties, Gillespie can pursue the claims on behalf of GMF. [9]

33.     Although the Court concludes that Gillespie may bring the claims in this action against Bermudez and Majestic on behalf GMF (as well as individually), Plaintiffs have not properly pleaded these claims at this stage because they have not complied with G.S. § 1-69.1. Under G.S. § 1-69.1(a)(3), "a general partnership bringing a suit in the name by which it is commonly known and called must allege the specific location of the recordation required by G.S. 66-68." G.S. § 66-68 requires a partnership doing business in North Carolina "under an assumed name or under

---

[9] Of course, any recovery obtained on GMF's partnership claims by Gillespie would be partnership property in which Urquilla would have a 50% interest.  N.C. Gen. Stat. § 59-51; 1 A. Bromberg & L. Ribstein, *Bromberg and Ribstein on Partnership* § 5.03[A] ("If fewer than all partners succeed in enforcing a partnership right, they hold in trust for the partnership any recovery or must account to the partnership for it.").

any designation, name or style other than the real name of the … owners thereof" to file with the register of deeds in the county in which it maintains a "place of business" a certificate identifying the name of the business and the names and addresses of each partner. The certificate must be signed by each partner.[10]  In order to sue on behalf of GMF, Plaintiffs were required to comply with G.S. § 1-69 by alleging compliance with G.S. § 66-68. *AMOCO v. AAN Real Estate, LLC*, 232 N.C. App. 524, 526-527, 754 S.E.2d 844, 846 (2014).  Plaintiffs have not done so in the Second Amended Complaint.  The Court concludes, however, that Plaintiffs should be provided leave to amend to comply with G.S. § 1-69.1(a)(3).  If Plaintiffs fail to amend the complaint to comply with G.S. § 1-69.1(a)(3) within fourteen days of this Opinion and Order, Plaintiff GMF's claims shall be dismissed.

<u>Plaintiffs have alleged the claim for fraud with sufficient particularity</u>.

34.    Defendants also contend that Plaintiffs have not pleaded the claim for fraud with the level of particularity required by Rule 9(b).  Rule 9(b) requires a party making a claim for fraud to allege the time, place and contents of the fraudulent representation, the identity of the person making the representation, and what was obtained by the fraudulent acts or representations.  *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).  The Rule 9(b) particularity requirement serves four salutary purposes:

> First, the rule ensures that the defendant has sufficient information to
> formulate a defense by putting it on notice of the conduct complained
> of . . . Second, Rule 9(b) exists to protect defendants from frivolous suits.
> A third reason for the rule is to eliminate fraud actions in which all the

---

[10] N.C. Gen. Stat. § 59-84.1(a) requires a partnership to comply with the filing requirements of G.S. § 66-68.

> facts are learned after discovery. Finally 9(b) protects defendants from harm to their goodwill and reputation.

*Perkins v. HealthMarkets, Inc.*, 2007 NCBC LEXIS 25, **14-15 (N.C. Super. Ct. 2007) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). "Mere generalities and conclusory allegations of fraud will not suffice" with respect to these elements. *Sharp v. Teague,* 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994) (citation omitted).

35.     Defendants contend that Plaintiffs have not adequately identified the "time" and "place" of the allegedly fraudulent activity. (Defs.' Brief Supp. Mot. to Dismiss 6).[11] The Second Amended Complaint alleges that Gillespie and Urquilla formed GMF around August 2014, and that Gillespie discovered the alleged fraudulent activity on January 4, 2016. GMF maintained its offices in Cabarrus County, North Carolina. Plaintiffs allege that Urquilla and Bermudez made the false representations from GMF's offices. (Second Amended Compl. ¶ 41). Plaintiffs further allege that Gillespie was frequently away from GMF's offices transporting shipments, and relied on Urquilla to manage GMF's finances. (*Id.* ¶¶ 9, 16). The Second Amended Complaint alleges that Urquilla and Bermudez "falsely represented to Gillespie that payment for transporting the shipments by partnership trucks and drivers was being made to [GMF]", but "[i]nstead the money was being diverted to Majestic, Urquilla, and Bermudez." (*Id.* ¶ 15). More particularly, Plaintiffs allege that

---

[11] Defendants have not argued that Plaintiffs failed to allege the contents of the fraudulent representations, the identity of the persons making the representation, and what was obtained by the fraudulent acts or representations.

Defendants made false representations and concealed material facts by, among other things, contracting with brokers and shippers under Majestic's name for transport of shipments by partnership trucks and drivers. Defendants also made this misrepresentation and concealed material facts by utilizing a method of billing where payment for transport of shipments on the outgoing leg of a trip was properly paid to the partnership, but payment for transport of shipments on the return leg of a trip was diverted to Majestic. (Second Amended Compl. ¶ 41).

36. Under the specific circumstances of this case, the Court concludes that Plaintiffs have alleged the time and place of the alleged fraudulent representations with the particularity required by Rule 9(b). By alleging that Defendants committed fraud in the approximately-eighteen (18) months spanning from August 2014 to January 4, 2016, Gillespie has effectively put Defendants on notice as to the time frame of the allegations that they must defend against. In addition, the Second Amended Complaint alleges that Bermudez and Urquilla managed the partnership's finances and logistics, and communicated with Gillespie, from the offices in Cabarrus County. It can be inferred from the allegations that Plaintiffs claim that the false representations were made to Gillespie either when he visited the GMF offices, or when Gillespie communicated with Urquilla and Bermudez from the road. This is sufficient to notify Defendants of the place at which their allegedly fraudulent representations were made. The motion to dismiss Plaintiffs' claim for fraud for failure to satisfy the particularity requirements of Rule 9(b) should DENIED.

THEREFORE IT IS ORDERED that:

37. Defendants' motion to dismiss based on the argument that Gillespie failed to comply with N.C. Gen. Stat. §59-1003 and North Carolina Rule of Civil Procedure 23(b) is DENIED.

38.     Defendants' motion to dismiss based on the argument that Gillespie's claims against Urquilla are partnership claims or are solely derivative and that Gillespie lacks standing to bring individual claims against Urquilla is DENIED.

39.      Defendants' motion to dismiss on the grounds that Gillespie does not have authority to pursue partnership claims on behalf of GMF against Urquilla or against the third-party Defendants in DENIED conditioned upon Plaintiffs amending the Second Amended Complaint to comply with N. C. Gen. Stat. § 1-69.1(a)(3) on or before fourteen (14) days from the issuance of this Opinion and Order. If Plaintiffs fail to so amend, the partnership claims alleged on behalf of GMF against Urquilla or against the third-party Defendants shall be GRANTED.

40.     Defendants' motion to dismiss based on the argument that Plaintiffs failed to plead their claims for fraud in with particularity pursuant to North Carolina Rule of Civil Procedure 9(b) is DENIED.

41.     Except as conditionally granted herein, Defendants' motion to dismiss is DENIED.

This the 9th day of September, 2016.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases